UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cv-00574-MOC

| | |
|---|---|
| JENNIFER L. PAYTON, | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) **ORDER** |
| ANDREW M. SAUL, | ) |
| **Commissioner of Social Security,** | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on judicial review of a final decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act (the "Act"). Plaintiff filed a Motion for Summary Judgment, requesting reversal and remand for rehearing. Doc. No. 15. The Commissioner in turn filed a Motion for Summary Judgment, requesting affirmance. Doc. No. 20. Plaintiff then filed a response opposing the Commissioner's Motion for Summary Judgment. Doc. No. 26. As explained below, the Court grants Plaintiff's motion, denies the Commissioner's motion, and remands this case to the ALJ for a decision consistent with this Order.

I.  BACKGROUND

   A.   Administrative Exhaustion

In March 2016, Plaintiff filed an application for Social Security disability insurance benefits under Title II of the Act, alleging she had been disabled since January 9, 2015. Doc. No. 1 at 1. Plaintiff's claims were denied initially and upon reconsideration. Doc No. 21 at 1. On July 25, 2018, an administrative law judge (ALJ) held a hearing to consider Plaintiff's claims. Id. On November 9, 2018, the ALJ issued a decision, concluding Plaintiff was not disabled within the

meaning of the Act. Doc. No. 10-3 at 24. The Appeals Council denied Plaintiff's request for review on August 21, 2019, rendering the ALJ's decision final and thus reviewable by this Court. Id. at 2. Plaintiff has exhausted available administrative remedies, so this case is ripe for judicial review, pursuant to 42 U.S.C. § 405(g).

### B. Sequential Evaluation Process

The Social Security Act states that "an individual shall be considered to be disabled . . . if [s]he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see id. § 423(d)(1)(A). The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that meets or equals a listed impairment in Appendix 1 to Subpart P of 20 C.F.R. § 404, a finding of "disabled" will be made without consideration of vocational factors;

4. If, upon determining residual functional capacity ("RFC"), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

5. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

See 20 C.F.R. §§ 404.1520, 416.920. The claimant "bears the burden of production and proof during the first four steps of the inquiry." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). If the claimant carries their burden through the fourth step, the burden shifts to the Commissioner

2

to show other work exists in the national economy that the claimant can perform. See id.

### C. The Administrative Decision

The issue before the ALJ was whether Plaintiff was disabled from January 9, 2015, the application date, to the date of the decision. Using the sequential evaluation process, the ALJ concluded at step five that Plaintiff was not disabled within the meaning of the Act. To begin, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since January 9, 2015. Doc. No. 10-3 at 17. At step two, the ALJ decided she suffered from the following severe impairments: depressive disorder (due to another medical condition), anxiety, myalgia, nostalgic paresthetica, upper motor neuron disease, and gastro-esophageal reflux disease (GERD) Id. At step three, the ALJ decided she did not have an impairment or combination of impairments that met or equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. Id. at 17.

Before turning to step four, the ALJ found Plaintiff has the residual functional capacity (RFC) to perform medium work as defined in 20 CFR 404.1567(c), except she must avoid concentrated exposure to hazards, fumes, odors, gases and poor ventilation. Id. at 19. Additionally, the ALJ restricted Plaintiff to "simple, routine tasks." Id.

At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. Id. at 22. Plaintiff had previously worked as a project manager, a customer complaint clerk, a payroll clerk, and a warehouse supervisor. Id. But at step five, based on Plaintiff's age, education, work experience, and residual functional capacity, the ALJ concluded there were jobs that exist in significant numbers in the national economy that she could perform including: dining room attendant, sandwich maker, and store laborer. Id. at 23–24. Because such work existed, the ALJ held that Plaintiff was not disabled under the Act. Id. at 24.

3

## II. DISCUSSION

In considering cross-motions for summary judgment, this Court "examines each motion separately, employing the familiar standard" provided by Federal Rule of Civil Procedure 56. Desmond v. PNGI Charles Town Gaming, 630 F.3d 351, 354 (4th Cir. 2011). Thus, each motion is reviewed "on its own merits 'to determine whether either of the parties deserve judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted).

When reviewing a disability determination, the Court "is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Courts do not conduct *de novo* review of the evidence. See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). Instead, our inquiry is limited to whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla evidence but may be less than a preponderance." Id. The Court will not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Id. (alterations omitted). Put simply, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id. (alterations omitted).

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Thus, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Id. If the Court has "no way of evaluating the basis for the ALJ's decision, 'the proper course, except in rare

circumstances, is to remand to the agency for additional investigation or explanation.'" Id. (quoting Florida Power & Light v. Lorion, 470 U.S. 729, 744 (1985)); see Brown v. Colvin, 639 F. App'x 921, 922 (4th Cir. 2016) (explaining courts do not "min[e] facts from the [administrative] record to support the ALJ's decisions"). This ensures the ALJ can "adequately explain his reasoning . . . in the first instance." Radford, 734 F.3d at 296.

Here, Plaintiff alleges two principal reasons that the Court should remand this case to the ALJ for reconsideration. First, the ALJ erred in law by failing to consider the medical opinions of Plaintiff's treating physicians, Dr. Charles Lapp and Dr. Ryan Conrad. Doc. No. 15-1 at 6. Second, the ALJ failed to build an "accurate and logical bridge" between Plaintiff's moderate limitations in concentration, persistence, or pace and her RFC. Doc. No. 26-1 at 7. The Court discusses and accepts these contentions in turn.

### A. Medical Opinion Evidence

Plaintiff argues that the ALJ erred by failing to consider or explain how he weighed the medical opinions of Dr. Charles Lapp, Plaintiff's treating physician for fibromyalgia ("FM") and chronic fatigue syndrome ("CFS"), and Dr. Ryan Conrad, Plaintiff's treating neurologist. When making a disability decision, the ALJ must "always consider the medical opinions in [a] case." 20 C.F.R. §§ 404.1527(b), 416.927(b). This includes the medical opinions of non-treating and non-examining physicians. See 20 C.F.R. §§ 404.1527(c), 416.927(c); see e.g., Lewis v. Berryhill, 858 F.3d 858, 868 (4th Cir. 2017); Smith, 795 F.2d at 346. Generally, the ALJ gives "controlling weight" to the medical opinion of a treating physician. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "Courts typically accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." Fox v. Colvin, 632 F. App'x 750, 756 (4th Cir. 2015) quoting

5

Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir.2006) (internal quotation marks omitted). Thus, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir.2001); see also 20 C.F.R. § 404.1527(c)(2). But, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir.1996) see also Pittman v. Massanari, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001) (noting Craig was superseded by subsequent regulation but finding its holding consistent with those regulations).

Where a treating physician's medical opinion is not afforded controlling weight, the ALJ may consider a host of non-exhaustive factors in deciding the weight to give any medical opinion, including: (1) the examining relationship, (2) the nature, extent, frequency, and length of treatment relationship, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record as a whole, and (5) whether the physician is a specialist. See 20 C.F.R. §§ 404.1527(c), 416.927(c); see also Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005). However the ALJ ultimately weighs the evidence, he "must both identify evidence that supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (internal quotations omitted); see Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017).

Here, Plaintiff complains that the ALJ erred by entirely failing to consider the opinions of both Dr. Ryan Conrad and Dr. Charles Lapp. Because the opinions of these treating physicians were not considered, the Plaintiff contends that the ALJ further erred by not explaining why the

6

opinions of these treating physicians were not given controlling weight. Both physicians wrote medical opinion letters that strongly supported Plaintiff's disability claim. In a March 27, 2018 letter, Dr. Conrad wrote that Plaintiff:

> does now have objective finding of progression of hyperreflexia throughout the extremities . . . This is considered pathologic and indicates there is both upper motor neuron disease present and progression of this disease over time . . . As a result, she will continue to experience muscle twitching, dysphagia, apnea, myalgia and fatigue that will, in my opinion, render her **unable to perform any sustained physical activity, either in or outside the home. I do not believe she would be able to perform a sedentary job** either as a result of her myalgia and upper motor neuron disease.

(Doc. 10-8 at 626)(emphasis added).

In another letter dated June 12, 2018, Dr. Lapp wrote that Plaintiff was:

> markedly impaired by weakness and exhaustion after minimal every day activity; post-exertional malaise that may prostrate her for days; muscle and joint pain that affects mobility, mood, and concentration and sleep; lightheadedness and near syncopal episodes that limit climbing, standing, and ambulation; recurrent HA's that interfere with concentration and dealing w/ others; GI problems that may require proximity to home or commode; sleep disruption that prevents her from keep normal work hours and leads to excessive daytime somnolence; and significant neurocognitive dysfunction including problems w/ memory, attention, reaction time, processing speed, multitasking and executive function. **My objective findings indicate that she would be unable to remain on task at any job, and would miss at least several days of work per month due to illness.**

(Id. at 630)(emphasis added).

In his decision denying Plaintiff's claim for benefits, the ALJ does not weigh or even mention either medical opinion. The Commissioner admits that the ALJ did not consider these medical opinion letters. Doc. No. 21 at 7. However, the law requires the ALJ to evaluate these medical opinions, and his failure to evaluate them alone merits remand. See 20 C.F.R. § 404.1527(a)(1)-(b); see Reinhardt v. Colvin, No. 3:14-cv-00488-MOC, 2015 WL 1756480, at *4 (W.D.N.C. Apr. 17, 2015).

Remand is especially merited here because Dr. Conrad and Dr. Lapp are treating

7

physicians whose opinions are entitled to controlling weight. If the ALJ disagrees with the opinions of these treating physicians, then he must provide an explanation for why their opinions are not supported by clinical evidence or why they are inconsistent with other substantial evidence. See Hines, 453 F.3d at 563; 20 C.F.R. § 404.1527.

In his motion for summary judgment, the Commissioner argued that "while the ALJ did not evaluate the letters submitted by Dr. Lapp and Dr. Conrad as opinion evidence, their conclusory statements regarding Plaintiff's ability to work were similar to the opinion of Dr. Tedeschi which was evaluated by the ALJ. Doc. No. 21 at 7. This argument fails because Dr. Tedeschi's opinion letter is completely different from those of Dr. Lapp and Dr. Conrad and deserved independent evaluation.

Dr. Tedeschi is a licensed psychologist who treated Plaintiff for depression. Doc. No. 10-8 at 625. Though Dr. Tedeschi noted in his opinion letter that Plaintiff suffered from a number of neurological and physiological symptoms which could be attributed to several medical impairments, he concluded that Plaintiff's **depression** made "it impossible for her to work." Id.

Unlike Dr. Tedeschi, Dr. Lapp is a nationally renowned expert in FM and CFS, and his opinion letter concerned completely different medical impairments than the depression addressed by Dr. Tedeschi. Doc. 10-8 at 628-30. Unlike Dr. Lapp and Dr. Tedeschi, Dr. Conrad is a board-certified neurologist and his opinion letter primarily addressed Plaintiff's upper motor neuron disease. Id. at 626-27. To argue that the ALJ need not have addressed Dr. Lapp and Dr. Conrad's medical opinions because the ALJ had already evaluated Dr. Tedeschi's opinion makes no sense. They addressed completely different topics. One is not the other and the ALJ was required to perform a function-by-function analysis of all Plaintiff's medical impairments – an impossible task if the ALJ simply ignores opinions which address those medical impairments. See Radford,

8

734 F. 3d at 295; Reinhardt, 2015 WL 1756480, at *4.

Dr. Lapp's and Dr. Conrad's opinion letters are also not "conclusory" as the Commissioner argues. Admittedly, Dr. Tedeschi's opinion letter is conclusory because it did not enumerate specific restrictions and instead stated that Plaintiff's depression made it "impossible for her to work," an issue reserved for the Commissioner. 20 C.F.R. § 404.1527(d)(1); R. 625.

By contrast, Dr. Lapp's opinion, which is three pages, enumerates a whole host of specific restrictions including, but not limited to: limits to climbing, sitting standing and ambulation; difficulty with concentration; difficulty dealing with others; requirements that she be in close proximity to her home or a commode; difficulty remaining on task and excessive absences from work. Doc. No. 10-8 at 630. Moreover, Dr. Lapp supported his findings by citations to a number of objective examination findings including computerized neuropsychiatric testing, tilt table testing, and cardio-pulmonary exercise testing. Id. at 629-30.

Dr. Conrad's letter lists additional objective findings, including progression of hyperreflexia throughout Plaintiff's extremities and clonus at the ankles bilaterally. Id. at 626. Like Dr. Lapp, Dr. Conrad also points to specific restrictions, in this case, an inability "to perform a sedentary job." Id.

Therefore, both Dr. Lapp and Dr. Conrad's medical opinions are not conclusory and are completely different from Dr. Tedeschi's opinion. The Commissioner therefore has no basis to argue that because the ALJ had already evaluated Dr. Tedeschi's opinion, he was not required to mention Dr. Lapp's and Dr. Conrad's opinions in his decision. Because the ALJ was required to evaluate Dr. Lapp's and Dr. Conrad's medical opinions and failed to do so, remand is appropriate.

**B. RFC Determination**

Plaintiff next argues that the ALJ's decision must be reversed or remanded because the ALJ failed to build an "accurate and logical bridge" between his finding that Plaintiff suffers from moderate limitations in "concentrating, persisting, or maintaining pace" and Plaintiff's RFC. In reviewing an ALJ's RFC determination, courts may remand where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis (such as failure to consider evidence from treating physicians), frustrate meaningful review. Social Security Ruling 96-8p, 1996 SSR LEXIS 15; See also Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). "When a plaintiff's claim is based on severe mental health impairments, the Social Security Rules and Regulations require a much more in-depth review and analysis of the plaintiff's past and mental health history." Davis v. Berryhill, No. 5:16-CV-00016-MR, 2017 WL 4248811, at *5 (W.D.N.C. Sept. 25, 2017). "The Regulations, therefore, set forth a mechanism for this type of review and documentation, known as the 'special technique,' to assist ALJs in assessing a claimant's mental RFC." Id. at 14; see SSR 96-8P, 1996 LEXIS 5; 20 C.F.R. §§ 404.1520a, 416.920a.

The "special technique" requires an ALJ to rate the degree of a claimant's mental health limitations using the following, four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3).

When using the "special technique" to help assess a claimant's mental RFC, "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Mascio, 780 F.3d at 638 (internal citations omitted). That is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's

10

limitation in concentration, persistence, or pace." Id. An ALJ may explain why a claimant's moderate limitation in concentration, persistence, or pace does not translate into an RFC limitation. Id. But in doing so, "[i]t is the duty of the ALJ to build an accurate and logical bridge from the evidence to his conclusion." Davis, 2017 WL 4248811, at *18 (internal citations omitted); See also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016).

Here, the ALJ failed to explain why Plaintiff's moderate limitations in concentration, persistence, or pace did not result in a corresponding RFC limitation. The ALJ does not mention Plaintiff's moderate limitations in his RFC determination. He only mentions those limitations earlier in the decision to acknowledge their existence. Having failed to explain why Plaintiff's moderate limitations in concentration, persistence, or pace result in no corresponding RFC limitation, the ALJ failed to build an "accurate and logical bridge" to his conclusions.

The Commissioner compounds the ALJ's error by arguing that the medical evidence "failed to demonstrate any specific cognitive abnormalities related to staying on task." Doc. No. 21 at 10. The Commissioner's statement ignores the medical evidence presented in this case. As Plaintiff mentions in her brief:

> The medical evidence of record, however, demonstrates ample evidence of Ms. Payton's diminished concentration, persistence, and pace. For instance, on March 3, 2016, Ms. Payton underwent computerized neurocognitive screening ("CNS") at the Hunter Hopkins Center, in which she scored in the 1st percentile (very low), for composite memory, verbal memory, visual memory, reaction time, cognitive flexibility and executive functioning.

Doc. 15-1 at 17; see also Mascio, 780 F.3d at 638 (stating that the ability to stay on task accounts for a claimant's limitation in concentration, persistence, or pace).

Moreover, the medical evidence from Plaintiff's treating physicians, the very evidence the ALF failed to consider at all, is clear that Plaintiff has cognitive abnormalities related to

11

staying on task. For example, Dr. Lapp clearly wrote that Plaintiff "loses attention quickly" and concluded "she would not be able to remain on task at any job." Doc. No. 10-8 at 629-30.[1]

At Plaintiff's hearing before the ALJ, the court's vocational expert was asked if a person "were to go off task greater than 10% of the workday, would the jobs" previously listed by the vocational expert as available to Plaintiff still be available. Doc. No. 10-3 at 51. The vocational expert responded, "No." Id. If the ALJ had considered Dr. Lapp's medical conclusions, then the ALJ would have had to explain why the vocational expert's answer was not dispositive at Step 5 of the sequential analysis to conclude that there were no jobs in the national economy available to Plaintiff.

In short, the ALJ was required to build an accurate and logical bridge from the evidence to his conclusion regarding the RFC. But by failing to address the evidence in the record related to Plaintiff's inability to stay on task, there is a gap in the bridge that renders it impassable. Because the ALJ failed to adequately explain why Plaintiff's moderate limitation in concentration, persistence, or pace did not translate into an RFC limitation, Plaintiff's claim must be remanded so that the ALJ can either reverse his earlier decision or explain why Plaintiff's limitations do not result into a limitation of her RFC.

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Summary Judgment, Doc. No. 9, is **GRANTED**, and the Commissioner's Motion for Summary Judgment, Doc. No. 20, is **DENIED**. Pursuant to the power of this Court to enter a judgment affirming, modifying, or

---

[1] The Court's own vocational expert during the hearing also stated that if Plaintiff were absent from her job approximately three days per month then there would be no jobs in the national economy for which she would be suited. Doc. No. 10-3 at 51. The ALJ would also have to consider this response from the vocational expert alongside Dr. Lapp's medical opinion because that opinion makes clear that she would likely miss work frequently.

12

reversing the decision of the Commissioner under 42 U.S.C. § 405(g), the ALJ's final decision is **REMANDED** for reconsideration consistent with this Order.

Signed: October 26, 2020

Max O. Cogburn Jr
United States District Judge